**Marie McDANIEL, Plaintiff-Appellant,**

v.

**Otis R. BOWEN \*, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 85–7573.**

United States Court of Appeals, Eleventh Circuit.

Sept. 9, 1986.

---

\* When this action was commenced the named defendant was "Margaret M. Heckler, Secretary

Floyd Sherrod, Legal Services Corp. of Alabama, Florence, Ala., for plaintiff-appellant.

of Health and Human Services." The caption has been altered pursuant to Fed.R.Civ.P. 25(d) to reflect succession of Otis R. Bowen to that office.

Frank W. Donaldson, U.S. Atty., Jenny L. Smith, Asst. U.S. Atty., Birmingham, Ala., for defendant-appellee.

Before RONEY, Chief Judge, CLARK, Circuit Judge and DOYLE *, Senior District Judge.

JAMES E. DOYLE, Senior District Judge:

Appellant McDaniel appeals from the district court's decision to affirm the determination of the Secretary of the Department of Health and Human Services that she is not entitled to supplemental security income. The Secretary found McDaniel ineligible for supplemental security income under § 1602 and § 1614(a)(3)(A) of the Social Security Act.

OVERVIEW OF THE RECORD

1. Procedural History

McDaniel, who was born December 14, 1925, applied to the Social Security Administration for supplemental security income alleging that she was disabled due to high blood pressure and ulcers. That application was denied and McDaniel did not appeal.

McDaniel applied again for supplemental security income alleging that she was disabled due to high blood pressure, varicose veins and gallstones. That application was denied. McDaniel filed a request for reconsideration. Upon reconsideration, the Secretary found that McDaniel had not established her disability. McDaniel filed a request for hearing, and a hearing was held before an administrative law judge (ALJ).

The ALJ found McDaniel not disabled. McDaniel requested Appeals Council review, which was denied. The ALJ's findings, therefore, represent the final decision of the Secretary.

McDaniel commenced this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Secretary's decision. The district court affirmed the decision of the Secretary, finding that the Secretary's decision was supported by substantial evidence. McDaniel appeals from that decision, contending that the Secretary's finding that she does not suffer from a severe impairment is not supported by substantial evidence, and that the Secretary applied an incorrect legal standard in determining whether her impairment is severe.

2. Medical Evidence

In a report dated April 4, 1983, Dr. Harold Blanton noted a variety of ailments suffered by McDaniel: arthritis generally and in the left knee in particular; hypertension that is difficult to control; dizzy spells and frequent headaches; a stomach disorder with frequent nausea, poor digestion and frequent vomiting, shortness of breath on exertion; intermittent depression; and general stiffness of joints. He noted that McDaniel had had fluid withdrawn from one knee on several occasions. He diagnosed acute and chronic gastritis, hypertension, general degenerative arthritis, mild depression, and hypertensive cardiovascular disease.

On April 26, 1983, McDaniel was admitted to the hospital with deep pains in her legs. She was treated for thrombophlebitis of the left leg and was discharged on April 29, 1983. She was treated with Heparin, Dalmane, Tylenol, Nubain and warm wet packs for her legs.

---

* Honorable James E. Doyle, Senior U.S. District Judge for the Western District of Wisconsin, sitting by designation.

Also on April 26, 1983, Dr. Donald Stewart examined McDaniel's chest and diagnosed cardiomegaly and possible minimal right effusion or scarring.

In a report dated August 2, 1983, Dr. E.V. Khouri noted that McDaniel suffered from varicose veins and high blood pressure. In a report of contact dated August 13, 1983, Dr. Khouri noted that McDaniel's blood pressure was poorly controlled, that she had bilateral varicose veins, and some edema late in the day, but that she showed no statis dermatitis, brawny edema or ulcers.

On November 22, 1983, Dr. Stewart examined McDaniel for urinary tract and kidney problems. He reported extrarenal pelves with questionable mild calycectasis.[1]

In a report transcribed on December 5, 1983, Dr. Stephen Branning noted McDaniel's complaints of pain in her legs which is exacerbated by prolonged standing or walking, and McDaniel's nausea and poor digestion. He diagnosed hypertension with cardiomegaly, peripheral venous insufficiency, and nodular density, right side of lung, with some calcification—likely a benign lesion.

At the hearing before the ALJ on August 22, 1984, when McDaniel was 58 years of age, she testified as summarized here: McDaniel frequently vomits after she eats, and has frequent headaches and dizzy spells, leg pains, and occasional chest pains. She can walk about one half mile at one time; she has trouble sitting and standing for more than a half hour at a time; she has difficulty bending, stooping, climbing and reaching; she has difficulty concentrating and performing under stress or around noises and crowds. McDaniel lives on food stamps and receives no other income. Her only work experience was as a young woman working on her father's farm. McDaniel's activities include limited housework, going to church, some gardening and some sewing. She does not take her blood pressure medicine because it

makes her dizzy; when she explained this to her doctor, he agreed she should stop taking the medicine; he did not prescribe alternative medication. She lives with some of her children who help her with the housework, cooking and gardening.

### 3. The ALJ's Findings and Conclusions

After summarizing the evidence in the record, the ALJ found that McDaniel has thrombophlebitis in the left leg, peripheral venous insufficiency, cardiomegaly, and probably a benign lesion on her lung. He found some of McDaniel's testimony not credible, particularly with regard to her doctor's acquiescence in her decision to stop taking her blood pressure medication and his failure to prescribe any alternative blood pressure medication. He found that McDaniel does not have any impairment which significantly impairs her ability to perform basic work-related activities, and therefore does not have a severe impairment under 20 C.F.R. § 416.921. He also found that McDaniel was not under a disability as defined by 20 C.F.R. 416.920(c).

### OPINION

### 1. Standard of Review

In reviewing a decision by the Secretary under § 205(g) of the Social Security Act, the district court and this court must apply the same standard: we are bound to uphold the Secretary's findings if they are supported by "substantial evidence" and if there exists no other "good cause" to remand. The court may not substitute its own judgment for that of the Secretary, but must determine whether there is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' " that the plaintiff is or is not entitled to benefits. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S.

**1.** Calycectasis (calicectasis) is the dilation of a calix of a kidney, usually due to an obstruction or infection. *See Stedman's Medical Dictionary,* 5th Unabridged Lawyers' Edition, 1982; *Dorland's Illustrated Medical Dictionary,* 25th Edition, 1979.

197, 229, 59 S.Ct. 206, 216–17, 8 L.Ed. 126 (1938)).

This deferential standard of review applies only to findings of fact, however, and "no similar presumption of validity attaches to the Secretary's conclusions of law, including the determination of proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389, (11th Cir.1982). Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal. *Id.*

*Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir.1983).

2. Applicable Regulations

To qualify for supplemental security income, a claimant must be "under a disability," which is defined in 42 U.S.C. § 1382c(a)(3)(A) as the inability:

... to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

"Physical or mental impairment" is defined in 42 U.S.C. § 1382c(a)(3)(C) as:

... an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Pursuant to the Act, the Secretary has issued regulations describing a five-step sequence to be followed in determining whether a claimant is entitled to supplemental security income (SSI):[2]

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment severe?

(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the claimant unable to perform his or her former occupation?[3]

(5) Is the claimant unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." 20 C.F.R. § 416.920(a)–(f).

McDaniel's burden in her claim for supplemental security income is to show that she meets the financial need requirement, that she is presently unemployed, that her impairment is "severe" within the meaning of the Act, and that she has no "former occupation." She may have the opportunity to prove that she has a listed impairment, automatically entitling her to disability benefits.

3. Issues in this Case

It is clear from the record that McDaniel met step one by proving that she is presently unemployed (and, had it been reached, step four, by proving she had no former occupation). This court assumes that McDaniel met the threshold financial need requirement; otherwise the Secretary would have reached no other question.

The ALJ found, however, that McDaniel failed at step two of the five-step sequential analysis, by failing to prove that her impairment is severe. He concluded that she was not under a disability as defined by 20 C.F.R. § 416.920(c). This court prescribed the proper application of step two

2. The same sequence applies to disability insurance benefits. In SSI, however, a claimant must also meet financial eligibility requirements. 20 C.F.R. § 416.202.

3. Many applicants for supplemental security income have no previous work experience that would constitute a "former occupation." In such cases, the claimant's burden is to establish that she has no former occupation. *See,* 20 C.F.R. § 416.965; SSR 82–63 (CE 1982). The claimant's burden met, the Secretary then has the opportunity to prove that there is other work in the national economy that the claimant could perform.

in *Brady v. Heckler,* 724 F.2d 914 (11th Cir.1984).[4] Because it appears that the ALJ disregarded the *Brady* standard and misapplied step two, the Secretary's decision must be vacated and the case remanded.

■ The issue in *Brady* was whether the Secretary's determination that the claimant was not suffering from a severe impairment was supported by substantial evidence when the determination was made on the basis of medical evidence alone, without consideration of vocational factors such as age, education and work experience. Based on the facts of Brady's particular case, we held that it was not.

20 C.F.R. § 416.920(c) states:

If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits. In *Brady* we set out to define "severe impairment" within the meaning of § 416.920(c) by contrasting it to nonsevere impairments. We stated that a claimant's impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

724 F.2d at 920. We concluded that, under this newly articulated standard, the Secretary's finding that Brady was not suffering from a severe impairment was not supported by substantial evidence. From representations by counsel during argument on this appeal, it appears that uncertainty persists about the *Brady* analysis of step two. We attempt here to clarify.

■ At step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be either severe or not severe. Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

■ In his September 25, 1984, decision, the ALJ did not cite *Brady,* which had been decided February 9, 1984, nor did he quote or paraphrase the *Brady* standard.[5] Taken as a whole, the ALJ's findings cannot be fairly construed as an application of *Brady.* Although the ALJ made a careful consideration of the record, he appears to have required McDaniel to meet a higher burden at step two than *Brady* requires.

■ Although purporting to terminate the disability inquiry at step two, it appears that, to some degree, the ALJ imported step five of the sequential analysis into step two. The ALJ found:

Although the claimant has never worked in the competitive job market, information in the record indicates that she demonstrates sufficient general educational development to meet the limited edu-

---

4. In *Brady,* it was 20 C.F.R. § 404.1520 (relating to disability insurance, rather than SSI) which was analyzed. The sequential evaluation process of § 416.920 (SSI) is identical to that of § 404.1520; they simply apply to different parts of the Social Security Act. *See Stone v. Heckler,* 752 F.2d 1099, 1100 n. 2 (5th Cir.1985). Because they are identical, they are analyzed in the same way. § 404.1520(c) is identical to § 416.920(c).

5. Although the panel has considered the procedure set forth in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985) [Part IV], we specifically reject any presumption that the ALJ and Appeals Council have applied an incorrect standard simply for failure to mention any particular legal opinion or to make an express statement as to the construction given to 20 C.F.R. § 404.-1520(c) (1984).

cational demands of numerous unskilled occupations available to her in the competitive job market.

These findings are irrelevant to the step two inquiry, though they may be relevant to step five. Clearly, the steps of the sequential analysis cannot be compressed into a general inquiry by individual administrative law judges employing a variety of methods. If a claimant succeeds at step two, the ALJ must go on to step three and then, if necessary, to steps four and five.

■ The Secretary urges that even had the *Brady* standard been applied correctly at step two, denial of McDaniel's claim at step two would have been required, and therefore the determination by the ALJ should be affirmed. We are well aware of the overload of disability claims facing the Secretary. This awareness tempts this court in cases like this in which it is not shown that the correct standard has been applied by the ALJ. It tempts this court to cut through delay by evaluating the administrative record itself and, applying the correct legal standard, determining for itself whether the claimant has met her step two burden (and, possibly, if it determines she has met that burden, by going on to apply the balance of the sequential steps). The temptation must be resisted, however. Even though motivated by a desire to reduce the Secretary's caseload, it would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases. The Congressional scheme is that, governed by standards promulgated by Congress and interpreted by the courts, the administrator is to find the facts case by case and make the determination of presence or absence of disability, and that, in the course of judicial review, the courts are then to respect the administrative determination. In the present case, we imply no view whether McDaniel has made the necessary showing at step two, properly applied.

The judgment of the district court is vacated and this case is remanded to the district court with instructions to remand the case to the Secretary for further proceedings consistent with this opinion.

VACATED and REMANDED.