533 So.2d 836 (1988)
Richard WALKER, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DISTRICT I, ESCAMBIA COUNTY, MEDICALLY NEEDY UNIT # 12, Appellee.
No. 88-139.
District Court of Appeal of Florida, First District.
October 19, 1988.
Warren R. Ross, Northwest Florida Legal Services, Inc., Pensacola, for appellant.
Rodney M. Johnson, Acting Dist. Legal Counsel, Dept. of HRS, Pensacola, for appellee.
WIGGINTON, Judge.
This is an appeal from a final order of the Office of Public Assistance Appeal Hearings, Department of Health and Rehabilitative Services (HRS), affirming action denying Richard Walker's application for benefits from the Medically Needy Program (MNP) on the basis that Walker is not disabled. Because it appears that the hearings officer disregarded the sequential evaluation set forth in 20 C.F.R. § 416.920 or misapplied that evaluation, the final order must be vacated and the case remanded.
Florida's Medicaid Medically Needy Program is authorized by section 409.266(7)(k), Florida Statutes, and is designed to provided *837 Medicaid benefits to individuals and families who would be eligible either for the AFDC or Supplemental Security Income (SSI) programs, but are otherwise ineligible due to the level of their income or the amount of assets that they own, and their level of income and/or amount of assets falls within the income and asset guidelines of the program. See also rules 10C-8.201; 10C-8.202; 10C-8.206; 10C-8.207; 10C-8.210; and 10C-8.211, F.A.C. If an individual is to qualify for MNP benefits he or she must be aged, blind, or disabled. Walker attempted to qualify for the benefits pursuant to the disability criteria.
Florida's definition of disability in rule 10C-8.201(3) is similar to the definition of disability contained within the SSI regulations promulgated by the Department of Health and Human Services  20 C.F.R. § 416.905.[1] In evaluating claims for MNP benefits, HRS utilizes all relevant SSI-related criteria.
Thus, pertinent to the instant case is 20 C.F.R. § 416.920, which describes a five-step sequence to be followed in evaluating whether a claimant is entitled to benefits. As capsulized in McDaniel v. Bowen, 800 F.2d 1026 (11th Cir.1986), the sequence involves the following inquiries:
(1) Is the claimant presently unemployed?
(2) Is the claimant's impairment severe?
(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his or her former occupation? [Footnote omitted.]
(5) Is the claimant unable to perform any other work within the economy?
800 F.2d at 1030. According to McDaniel, "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of `not disabled.' 20 C.F.R. § 416.920(a)-(f)." Id. (emphasis added). The court in McDaniel went on to explain that step two  whether a claimant's impairment is severe  is a threshold inquiry:
It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.
Id. at 1031. Thus, step two being a threshold inquiry, the most significant step in the sequential evaluation begins at step three.
20 C.F.R. § 416.920(d), step three of the sequential evaluation, provides that if the claimant has "an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s)," the claimant will be found to be disabled. Apparently, according to McDaniel, a negative answer to this step would not lead to a determination of no disability but would prompt the hearings officer to proceed with either step four or step five under which an evaluation would be made regarding the claimant's ability to perform his or her former occupation or any other work within the national economy.
Additionally, if the claimant has a mental impairment or impairments, that fact shall be evaluated under 20 C.F.R. § 416.920(a), and, if a claimant has more than one impairment but those impairments individually do not meet or equal the severity of any of the listed impairments, then the concurrent impairments are evaluated in combination. *838 20 C.F.R. §§ 416.922(b) and 416.923. Further, under 20 C.F.R. § 416.926, it is possible for a claimant to be awarded benefits if his or her impairment is medically equivalent to one of the listed impairments. Cornelious v. Secretary of Health and Human Services, 655 F. Supp. 1211 (W.D.N.Y. 1987).
In the instant case, Walker applied for MNP benefits on January 22, 1987. His initial application was denied by HRS on April 15. He thereafter reapplied for benefits on April 16 and was again denied on June 15. His request for reconsideration was denied on September 11 and he pursued an appeal of this denial.
In his application for benefits filed with HRS's Office of Public Assistance Disability Determinations (OPDD), Walker alleged that he was disabled due to a broken disc in his lower spine, emphysema, chronic bronchitis, cirrhosis, chronic sinus trouble, and an inability to lift or see well. He added a mental disability at the hearing. Included in the record is a report of contact with Walker's brother-in-law, with whom he was living at the time, who stated to the case worker that Walker had significant problems with breathing and coughing during the night which kept him from sleeping more than three hours, requiring him to take two naps during the day. The brother-in-law also stated that Walker is able to open a can of soup and prepare it for himself but cannot cook any complex meals, that he cannot do any household chores because of problems with his eyesight and breathing, and that he is very dependent upon various family members throughout the day due to his eyesight and breathing problems.
Appellant testified on his own behalf at the hearing concerning his subjective experience of the symptoms connected with his various impairments as well as his testimony regarding other facts relevant to his claim including his height, weight, and his having earlier suffered from alcoholism. Walker testified that he experienced "hellish" pain connected with some of his physical impairments and that his sensitivity to light was virtually incapacitating. Walker has not worked since 1975, when he was employed as an electrician.
In her final order, the hearings officer considered medical evidence reviewed by the OPDD as well as medical evidence submitted at the hearing but not submitted to the OPDD.[2] The hearings officer found that the OPDD determined the severity of Walker's impairments did not meet or equal any impairment described in the listing of impairments and that although he had alleged or there were reports of pain, the pain did not interfere with his daily functioning. The hearings officer also noted the OPDD considered the combination of not severe impairments in its assessment but concluded that none of the impairments either singly or in combination impacted on Walker's physical or mental functional capacity. Finally, although it does not appear in the OPDD's determination, the hearings officer found that Walker's "impairments do not prevent his engaging in work available in the national economy by reducing his residual functional capacity significantly." Also, she found that the allegation of cirrhosis was not mentioned in the medical evidence.
In her conclusions of law, the hearings officer noted the pertinent sections of the listing of impairments relevant to Walker's physical and mental disorders but concluded that the medical evidence "does not show that Mr. Walker's impairments meet the level of severity described in the listing of impairments. The findings do not establish that Mr. Walker's impairments prevent *839 his engaging in work available in the national economy." Accordingly, the hearings officer concluded that HRS was correct in denying Walker's application because he was not disabled.
On appeal, Walker raises several points attacking the hearings officer's order. Consistent with Walker's arguments, we are unable from the final order to determine whether the hearings officer properly applied the regulations as above set forth, including the sequential evaluation, or whether, in her analysis, the hearings officer considered Walker's entire medical condition. Accordingly, we cannot conduct a meaningful review of the final order. Cf. Jamison v. Bowen, 814 F.2d 585 (11th Cir.1987). As was the case in Jamison, the hearings officer certainly considered Walker's claims of medical impairments separately. In doing so, she concluded that the medical evidence did not show that Walker's impairments met the level of severity described in the listing of impairments. Nonetheless, we cannot determine from this language if she considered his impairments in combination in determining whether he was disabled within the meaning of the regulations. Her mention of the OPDD's determination in her findings of fact that the combination of not severe impairments had been considered does not necessarily conclusively establish that the hearings officer herself considered the impairments in combination.[3]
As argued by Walker, we consider ambiguous, at best, the hearings officer's finding that Walker is capable of engaging in work available in the national economy. Certainly, if the hearings officer had proceeded to steps four and five, it was incumbent on her to determine what sort of work Walker was capable of doing as considered in 20 C.F.R. § 416.960 et seq. Moreover, we note that in contrast to the hearings officer's conclusion, there is a disability opinion of record by one of appellant's treating physicians clearly establishing that appellant does not have the residual functional capacity to do even sedentary work.[4] The ambiguity is amplified by the hearings officer's finding that "the activities of daily living contact with Mr. Walker's brother-in-law indicated he performed normal daily activities." Since no other evidence was apparently submitted at the time of the hearing indicating how the OPDD had determined Walker's residual functional capacity to perform work-related activity other than the above-cited contact with Walker's brother-in-law, and there is no other evidence indicating how the hearings officer arrived at her conclusion that Walker's impairments do not prevent his engaging in work in the national economy, we can only assume that the sole evidence considered by the OPDD in making its initial determination of Walker's claim and by the hearings officer in reaching her conclusion is the evidence contained in the brother-in-law's report, which is admittedly not medical evidence as required by 20 C.F.R. § 416.945(a). That section provides that "[r]esidual functional capacity is a medical assessment."
It was also incumbent upon the hearings officer to compare Walker's impairments to the applicable sections of the listing of impairments to determine whether his symptoms were medically equivalent to any of those sections. 20 C.F.R. § 416.926. However, although Walker argues that the hearings officer did not make a finding regarding the severity of appellant's alleged mental impairment, we do note from the order that she apparently did consider his anxiety-related disorders under the appropriate listing.
*840 In conclusion, because in this case we cannot ascertain whether the hearings officer properly followed the regulations relevant to the inquiry before her, the order is VACATED and the cause is REMANDED to the hearings officer for further consideration of the evidence according to the applicable regulations and consistent with this opinion.
JOANOS and BARFIELD, JJ., concur.
NOTES
[1] Section 416.905 defines disability

... as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy. To determine whether you are able to do any other work, we consider your residual functional capacity and your age, education, and work experience.
[2] Walker would argue that under 20 C.F.R. § 416.1429, he was entitled to submit new evidence before the hearings officer as well as the evidence used in making the determination or decision under review. To the contrary, rule 10-2.056(3), Florida Administrative Code, provides that the hearings officer "shall determine whether the action by the agency was correct at the time the action was taken" (emphasis added). We note that the cited federal regulation applies only to federal administrative law judges and Walker has cited to no authority indicating that such regulation applies in the instant case. Nonetheless, the hearings officer apparently considered all evidence that was presented at the hearing and therefore we do not reach this issue.
[3] Appellee asserts that the hearings officer did not proceed beyond the second step of the sequential evaluation. However, that argument is rather disingenuous in light of the hearings officer's own language to the effect that she considered the listing of impairments which indicates that she at least proceeded to step three. Further, her remarks concerning appellant's ability to engage in work available in the national economy would suggest that the hearings officer may have considered steps four and five.
[4] We emphasize that in our decision today we express no opinion on whether the factual findings of the hearings officer were in any way inadequate. For the purposes of this opinion, we accept the findings of the hearings officer.