606 So.2d 446 (1992)
Marilyn FRICKER, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 91-3290.
District Court of Appeal of Florida, First District.
October 5, 1992.
*447 Karen P. Campbell, Florida Rural Legal Services, Inc., Ft. Pierce, for appellant.
Karen M. Miller, District Legal Counsel, HRS, West Palm Beach, for appellee.
WIGGINTON, Judge.
This is an appeal from a final order of the Office of Public Assistance Appeal Hearings, Department of Health and Rehabilitative Services, affirming action denying Marilyn Fricker medical assistance pursuant to the Medically Needy Program.[1] For the following reasons, we reverse.
Mrs. Fricker is a 60-year-old woman who applied for benefits from Florida's Medically Needy Program to assist her in paying the high costs of her medical care. She made an initial request for benefits on December 12, 1990, on the basis that her medical conditions rendered her unable to work.
At the time of application for benefits, Mrs. Fricker suffered from several physical ailments, including insulin-dependent diabetes mellitus with neuropathy, severe disequilibrium, a pulmonary embolism causing pulmonary vascular hypertension (chronic coughing), multiple abdominal hernias, and a medical history of breast carcinoma. She has been treated for these various ailments by her primary physician, Dr. Glider, since 1985. Dr. Glider has recently declared Mrs. Fricker to be totally disabled.
On December 19, 1990, Mrs. Fricker's application was forwarded by the local unit of the Department of Health and Rehabilitative Services to the Office of Public Assistance  Disability Determination (OPDD) for an evaluation of her claim of disability. After reviewing pertinent medical records and personally contacting Mrs. Fricker's treating physicians, including Dr. Glider, OPDD concluded in a final report issued May 30, 1991, that Mrs. Fricker indeed suffers from breast cancer and diabetes; however, it also determined that Mrs. Fricker's presently disabling conditions would not remain disabling for twelve continuous months. Accordingly, on June 11, based on OPDD's disability determination, the local HRS unit denied medically needy benefits.
Mrs. Fricker appealed and an administrative hearing was held on July 31. At that hearing, Mrs. Fricker represented herself and appeared with her husband. The hearing officer asked Mrs. Fricker to discuss her illness, her education, and her past employment. She testified that she is currently serving on the Board of Directors of her homeowner's association, that she is able to do laundry, clean her house, and cook meals. She testified that she recently, but erratically, worked as a homemaker/companion for the Visiting Nurse Services, *448 that she has a degree in early childhood education, that she had worked in the distant past for the Methodist Board of Education for ten years, and that at one point in time she had been a licensed real estate agent. However, she also testified as to her present medical problems which, according to her, severely limit her ability to work in any consistent capacity.
Following the hearing, the hearing officer denied Mrs. Fricker her appeal and affirmed the agency action. In his order, the hearing officer competently and concisely set forth the pertinent sequential review process mandated by 20 CFR § 415.920. See, Walker v. Department of Health and Rehabilitative Services, 533 So.2d 836 (Fla. 1st DCA 1988) (Walker I). However, in proceeding on to deny her benefits, Mrs. Fricker argues, and we agree, the hearing officer nonetheless misapplied and ignored certain portions of that same process.
As noted by the hearing officer, and as emphasized by Mrs. Fricker in her brief, a five-step sequential evaluation process has been established for determining whether a person is disabled for purposes of the Medically Needy Program. According to Florida Administrative Code Rule 10C-8.201, the purpose of the Medically Needy Program "is designed to provide Medicaid benefits to individuals and families who meet the technical requirements of the categorical programs, but are ineligible for assistance due to their levels of income or assets." As we earlier noted in Walker I, Florida's definition of disability in Rule 10C-8.201(3) is similar to that found within the Supplemental Security Income regulations promulgated by the Department of Health and Human Services  20 CFR § 416.905. In evaluating claims for medically needy benefits, HRS utilizes all relevant SSI-related criteria.
Thus, turning to the sequential evaluation, the first step is to determine whether the claimant is engaging in any "substantial gainful activity." If he or she is doing so, benefits are denied. 20 CFR § 416.920(b). However, if the claimant is not engaging in any substantial gainful activity, the decision-maker must proceed to step two, involving an evaluation of whether the claimant has a "severe" impairment. 20 CFR § 416.920(c). If the impairment is not severe, benefits are denied at this step and no further evaluation is necessary. If the impairment is severe, the evaluation proceeds to step three.
Under step three, the decision-maker must determine whether the impairment meets the durational requirement and whether it meets or equals one of a number of listed impairments acknowledged as so severe as to preclude substantial gainful employment. 20 CFR § 415.920(d); 20 CFR, Part 404, sub-part P, Appendix I (1991). If the impairment meets or equals the listing of impairments, the claimant is conclusively presumed disabled. See Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).
However, even if a claimant's impairment does not meet or equal a listed impairment, he or she may still be found disabled under steps four or five of the evaluation. Step four involves the determination of whether the claimant can engage in his or her past relevant work. 20 CFR § 415.920(e). If so, the claimant will not be found disabled. If, however, the claimant is found unable to engage in his or her past relevant work, the decision-maker moves to step five involving the determination of the claimant's residual functional capacity and his or her age, education and past work experience, in order to evaluate whether there are other jobs existing in the national economy that the claimant can perform. 20 CFR § 416.920(f).
Once a claimant establishes a prima facie case of entitlement under the sequential test, the burden then shifts to HRS to show that the claimant was either capable of performing his or her former occupation or alternate work available in the national economy. See Walker v. Department of Health and Rehabilitative Services, 554 So.2d 1202 (Fla. 1st DCA 1989) (Walker II), citing Hall v. Harris, 658 F.2d 260, 264 (4th Cir.1981).
Turning to the instant case, it is implicit in the hearing officer's analysis *449 that he found Mrs. Fricker was not presently employed and that her impairments met the initial threshold level of severity. That this is so is demonstrated by the hearing officer's moving immediately to a determination of whether Mrs. Fricker's impairments in fact meet any one of the listed impairments in Part 404, subpart P, Appendix I.[2] However, in so doing, the hearing officer found that Mrs. Fricker's diabetes "did not reflect end organ damage, involuntary movements, paralysis, or major interference with use of hands, fingers, arms, or locomotion, although gait peculiarity was noted." In this he erred, for whether or not Mrs. Fricker's diabetes reflected end organ damage is not pertinent to an evaluation of the severity issue. See Martin v. Secretary of Health, Education and Welfare, 492 F.2d 904 (4th Cir.1974).
Moreover, although Mrs. Fricker's disequilibrium does not equal the necessary "ataxia" as described in section 11.00 C of Part 404, subpart P, Appendix 1, Dr. Glider nonetheless described her as suffering from severe disequilibrium. In that sense, the hearing officer did not discuss whether Mrs. Fricker's condition might "equal" diabetes mellitus as described in the listed impairments.
A further concern we have with the final order is the minimal consideration the hearing officer gave to Dr. Glider's letter describing Mrs. Fricker as being "totally disabled." In the order, the hearing officer refers to that letter obliquely by recognizing that Mrs. Fricker "was, recently, totally disabled." Although it is true that a hearing officer does not necessarily have to accept a physician's conclusory statement that a patient is totally disabled for purposes of the analysis under the regulations, see Schnorr v. Bowen, 816 F.2d 578 (11th Cir.1987), since Dr. Glider's opinion on this point was substantially uncontested in the record, the hearing officer's failure to elaborate on this point is perplexing, especially in light of the other defects with which we find his order plagued.
Additionally, we find the hearing officer erred in applying the durational requirement found in 20 CFR § 416.905(a). That rule defines disability
... as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. [Emphasis added]
Apparently, the hearing officer construed the medical records as indicating that Mrs. Fricker's disability would not extend for twelve or more continuous months. That may be true insofar as her recovery from cancer is concerned; however, he overlooked the fact that, at the very least, her diabetes and disequilibrium, as well as her chronic coughing, have clearly existed for at least twelve months, thereby falling within the definition.
Finally, and most important, the hearing officer gave little analysis to the issue of Mrs. Fricker's residual functional capacity. Since the hearing officer concluded that Mrs. Fricker's impairments did not meet or equal the listed impairments, it was incumbent upon him to move on to subparagraphs (e) and (f). In this regard, the hearing officer failed to specifically address subparagraph (e), involving a review of Mrs. Fricker's residual functional capacity to determine whether she could do the work she has done in the past; instead, he found that given her "advanced level of education, high communication skills, remaining competence, and her advancing but not yet retirement age, employability would be feasible so long as excessive exertion were not necessary." However, that latter analysis is performed in subparagraph (f) only in instances where it is established that a claimant cannot perform work done in the past. See Hall v. Harris, 658 F.2d 260 (4th Cir.1981).
*450 Below, the only evidence before the hearing officer as to Mrs. Fricker's employability was that which she presented herself establishing that she had, in the distant past, worked in parochial education and that she presently has done some volunteer work. In addition, Mrs. Fricker maintained that she has very little energy and sleeps most of the day (although admittedly that is in great part due to the chemotherapy she is presently receiving), that her disequilibrium restricts her from ambulating safely, and that her chronic coughing disrupts any amount of extended concentration that she might otherwise be capable of employing. Furthermore, other than submitting Mrs. Fricker's complete medical files, HRS presented no other evidence tending to establish her present employment capabilities. See Hall, 658 F.2d at 264-65.
As was the case in Walker I, we are here unable to glean from the final order the necessary findings and analysis called for by the sequential evaluation. Consequently, we cannot conduct a meaningful review of the final order and must therefore vacate the order and remand the cause to the hearing officer for further consideration of the evidence.
VACATED and REMANDED for further proceedings consistent with this opinion.
ALLEN and WEBSTER, JJ., concur.
NOTES
[1] § 409.266(7)(k), Fla. Stat. (1989); Fla. Admin. Code Rules 10C-8.200-10C-8.211 (repealed, effective April 5, 1992). Mrs. Fricker maintains that the repeal of the above rules does not immediately impact her appeal because she is requesting retroactive benefits.
[2] However, we would note that, in any event, Mrs. Fricker's impairments would meet the step two-threshold level of severity. It has been held that a claimant's burden at step two is "mild," allowing "only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026 (11 Cir.1986).