[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13053

Non-Argument Calendar

_____

MILY CABRERA,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00099-JRK

_____

Before WILSON, LAGOA, and LUCK, Circuit Judges.

WILSON, Circuit Judge:

Mily Cabrera appeals the district court's order affirming the decision of the Social Security Administration (SSA) to deny her application for supplemental security income (SSI) and disability insurance benefits (DIB). Cabrera argues that the Administrative Law Judge (ALJ) improperly gave little to no weight to the opinions of Dr. Gustavo Ruiz, her mental health treating physician. After careful review of the record and the parties' briefs, we reverse and remand.

## I. Background

First, we will discuss Cabrera's medical records. Next, we will address Cabrera's written submissions to the SSA, known as Adult Function Reports, and her testimony before the ALJ. Last, we will detail the agency proceedings, the ALJ decision, and her appeals from the ALJ's decision.

### A. Medical Records

In January 2017, Cabrera's primary care physician referred her for an initial evaluation to Deborah Rivera of Mindful Behavioral Healthcare, a licensed mental health counselor. Rivera noted the following: Cabrera had poor judgment, fair insight, intact memory, anxious and depressed mood, congruent and tearful affect, and was dressed casually. Cabrera reported a history of depression, anxiety, and suicide attempts. Rivera gave Cabrera a

referral for medication management and psychotherapy. Rivera diagnosed Cabrera with major depressive disorder, single episode, severe without psychotic features; unspecified anxiety disorder; and panic disorder without agoraphobia.

The next month, Cabrera was involuntarily hospitalized under the Baker Act.[1] Dr. Tracy Macintosh of Osceola Regional Medical Center examined Cabrera. Dr. Macintosh noted that Cabrera's psychiatrist requested hospitalization after seeing Cabrera had cut the words "HATE ME"[2] on her right arm and had multiple cuts in her left arm. Throughout the same hospital stay, Dr. Shahid Elahi examined Cabrera and reported that she had poor to fair judgment and insight, intact memory, anxious mood, and adequate concentration.

Also in February 2017, Cabrera began meeting with Dr. Vivian Charneco from Mindful Behavioral Healthcare, who she continued seeing monthly until June 2020. Dr. Charneco consistently found Cabrera to be anxious and depressed but reported

---

[1] In Florida, under the Baker Act, a person may be involuntarily hospitalized and examined if there is reason to believe they are mentally ill and: (1) the person has refused voluntary examination or is unable to determine if an examination is needed; and (2) the person is likely to suffer from neglect and the refusal of examination could threaten their well-being or there is substantial likelihood that, without care or treatment, that person will cause serious bodily harm to themselves or others in the near future as evidenced by recent behavior. Fla. Stat. § 394.467.

[2] Later medical documents report that Cabrera cut the words "HIT ME," rather than "HATE ME" on her left arm.

fluctuations in Cabrera's sleeping habits and appetite. Cabrera's concentration, insight, and judgment ranged from adequate to poor depending on the visit.

In March 2017, Cabrera began seeing psychiatrist Dr. Ruiz from Mindful Behavioral Healthcare, who she continued to see monthly through May 2020. Dr. Ruiz consistently reported Cabrera to be anxious and depressed. Dr. Ruiz reported changes in Cabrera's insight and judgment, which ranged from adequate to superficial, and her concentration, which ranged from adequate to diminished. Dr. Ruiz prescribed Cabrera a number of medications, including Klonopin, Zoloft, Lamictal, Seroquel, Temazepam, and Lamotrigine.

In April 2017, Cabrera was again hospitalized after a suicide attempt. Dr. Hanish Sethi noted that Cabrera was hospitalized for cutting herself on her right leg and left wrist with suicidal attempt and ideations, anxiety, and depression. Dr. Sethi found Cabrera to have an anxious mood, congruent affect, good concentration, limited judgment and insight, and impaired sleep.

In July 2017, Dr. Ruiz reported Cabrera's continued diagnoses and noted that Cabrera has emotional limitations related to social interaction and coping with stress and anxiety. Dr. Ruiz suggested that Cabrera would benefit from traveling with her emotional support pet to help alleviate these difficulties and enhance her ability to function independently.

In August 2017, Dr. Katherine Pilarte of Hispanic Family Counseling diagnosed Cabrera with severe major depressive

disorder in addition to the continued diagnosis of generalized anxiety disorder.  Dr. Pilarte also noted that Cabrera was suicidal, in distress, and had difficulty getting out of bed.

In March 2018, Cabrera was involuntarily hospitalized for the second time under the Baker Act at Aspire Behavioral Center after law enforcement found her to be in distress at her residence and likely to cause serious bodily harm to herself.  The intake screening document has little other information because Cabrera refused to complete the assessment.

In June 2018, Dr. Ruiz reported in a mental impairment questionnaire that Cabrera had diagnoses of bipolar disorder, panic disorder with agoraphobia, and generalized anxiety disorder.  He opined that Cabrera had a poor prognosis, with depressed mood, fatigue and lack of energy, feelings of guilt, indecision, difficulty concentrating, racing thoughts, poor attention, and anxiety.  He found Cabrera to have: (1) moderate limitations in activities of daily living; (2) marked limitations in ability for social functioning; (3) moderate limitations in the ability to concentrate, persist and maintain pace; (4) four or more episodes of decompensation within a 12-month period, each at least two weeks duration; and (5) likely absences from work of more than four days per month due to her impairments or treatments.

In September 2018, Dr. Ruiz reported in a mental impairment questionnaire that Cabrera had diagnoses of bipolar disorder, panic disorder without agoraphobia, and generalized anxiety disorder.  He reserved prognosis.  Dr. Ruiz found Cabrera to have: (1)

moderate limitations in activities of daily living; (2) marked limitations in ability for social functioning; (3) marked limitations in the ability to concentrate, persist and maintain pace; (4) four or more episodes of decompensation within a 12-month period, each at least two weeks duration; and (5) likely absences from work of more than four days per month due to her impairments or treatments.

In August 2019, Cabrera went to the hospital to be treated after a bicycle accident. She was riding in a large group when she flipped over the handlebars and had to receive care for her physical injuries. There were no notations concerning Cabrera's mental health.

Also in August 2019, Dr. Ruiz reported in a mental impairment questionnaire that Cabrera had diagnoses of bipolar disorder, panic disorder without agoraphobia, generalized anxiety disorder, and borderline personality disorder. He opined that Cabrera had a poor prognosis and had results that were suggestive of severe depression and severe anxiety. Dr. Ruiz found Cabrera to have: : (1) moderate limitations in activities of daily living; (2) marked limitations in ability for social functioning; (3) marked limitations in the ability to concentrate, persist and maintain pace; (4) four or more episodes of decompensation within a 12-month period, each at least two weeks duration; and (5) likely absences from work of more than four days per month due to her impairments or treatments.

During the same time that Cabrera regularly saw Dr. Ruiz, Cabrera also regularly met with Dr. Charneco.  In Cabrera's June 2020 appointment, Dr. Charneco noted that Cabrera felt worse, with difficulty sleeping, mood swings, and increased anxiety, anger, and irritation.  Cabrera reported seeing shadows in the form of persons in her room, voices calling her when no one is there, and difficulty being around other people.   Dr. Charneco noted Cabrera's diagnoses as bipolar disorder, severe with psychotic features, most recent episode depressed; panic disorder without agoraphobia; generalized anxiety disorder; and borderline personality disorder.

## B.  *Non-Medical Evidence*

In May 2017, Cabrera completed an Adult Function Report where she checked that she was living at home with family. Cabrera described her daily activities as "taking medications and sleeping."  She is no longer able to enter a restaurant and be around people or noise.  She has no problem dressing and feeding herself, but needs reminders to bathe, care for her hair, or shave.  She needs to take medicine to sleep.  She used to cook fresh meals, but now she prepares sandwiches and frozen food because she forgets what she puts on the stove.  She does laundry once a month.

In September 2017, Cabrera completed a second Adult Function Report where she checked that she was living in an apartment

with friends.[3]  Cabrera described her day as waking up, eating something, and then going back to bed; she does not have energy to do anything else.  She is no longer able to be around people, socialize, or work.  Cabrera does not care about her physical appearance and dressing, bathing, caring for her hair, shaving, and feeding herself.  She needs reminding to take a shower, brush her hair, and take medicine.  She cannot sleep without medicine.  She prepares sandwiches and frozen foods when she remembers.  Her roommate does all the household chores.  Cabrera drives if necessary and she shops in stores for food once a month.  The only place she goes on a regular basis is to her monthly doctor's appointments, but she needs reminders and someone to accompany her.  Cabrera does not have the patience to be around others because she gets panic attacks.  She struggles to pay attention and follow written and spoken instructions.  She noted that she cries for any reason, cuts herself, becomes aggressive when told what to do, and does not want to be alive.

In February 2019, Cabrera completed a third Adult Function Report where she checked that she was living in an apartment with friends.  Cabrera described her daily activities as waking up, sometimes eating something, and stays in bed all the time.  Her medications make her slow and cause her to sleep too much, she has panic attacks at least three times a week, she gets mad and aggressive for

---

[3] While it's unclear how many people actually lived in the apartment, Cabrera's testimony at the ALJ hearing clearly indicates that she relies heavily on one roommate.

no reason, and she does not like to be around people. She is no longer able to work, play sports, and be around people. Cabrera does not care about feeding herself, dressing, or caring for her hair. She sometimes shaves and bathes but said her illness affects her because she fell in the bath. She needs reminding to take a shower, do her hair, and take her medicine. She cannot sleep without medicine. She prepares sandwiches and frozen food but sometimes does not want to eat. Cabrera only goes outside to see the doctor and grocery shop about once a month when her friend is with her. She no longer drives and cannot go out alone because she gets lost. Cabrera does not have patience to be around others because she sometimes gets panic attacks or hits someone. She struggles in paying attention and following instructions. Cabrera is scared to be around other people. She noted that she cries for any reason, cuts herself, gets aggressive, and sometimes does not want to be alive.

In April 2019, Cabrera completed a fourth Adult Function Report where she checked that she was living in an apartment with friends. She describes her day as sleeping most of the time because she is too tired to live and does not want to talk to anyone. Cabrera does not care for her hair and shaves when possible. She needs reminding to take a shower, brush her hair, and take medicine. She cannot sleep without medicine. Cabrera states that she only eats cereal, but she sometimes prepares sandwiches and frozen foods and sometimes her roommate cooks for her. Her roommate shops for food for Cabrera. The only place she goes on a regular basis is her monthly visits to the doctor's office, but she needs reminders and someone to accompany her. She does not know how long she

can pay attention and struggles with following instructions. Cabrera noted that she does not care about her life, does not want to eat or do anything, cuts herself to externalize her internal pain, and sometimes gets aggressive.

In August 2020, Cabrera provided testimony at her ALJ hearing. Cabrera could not recall the last time she entered a grocery store or left her house, and stated she does not go anywhere. She has negative thoughts, hears voices, and is always tired. Cabrera is driven by her roommate or by a rideshare driver to get to her doctor's appointments. She relies on her roommate to pick up medication and purchase frozen meals. She can sleep when taking her medication. Cabrera struggles with dizziness, aggressiveness, forgetfulness, and she has at least three panic attacks a week.

### C. Agency Proceedings

In 2017, Cabrera applied for DIB and SSI, alleging an onset date of May 7, 2015 for the following disabilities: depression, anxiety, and mental disability. Disability examiners denied Cabrera's application initially and on reconsideration. Cabrera then requested and received an administrative hearing before an ALJ.

The ALJ must follow five steps when evaluating a claim for disability.[4] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity, she is not disabled. Id.

---

[4] If the ALJ determines that the claimant is or is not disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

§§ 404.1520(b), 416.920(b).  Second, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to perform basic work activities, she does not have a severe impairment and is not disabled.  Id. § 404.1520(c), 416.920(c); *see also McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (describing Step Two as a threshold inquiry, allowing "only claims based on the most trivial impairments to be rejected").  Third, if a claimant's impairments meet or equal an impairment listed in a provided appendix (the "Listings"), she is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1.  Fourth, if a claimant's impairments do not meet or equal an impairment in the Listings, the ALJ must assess the claimant's Residual Functional Capacity (RFC).[5]  20 C.F.R. §§ 404.1520(e), 416.920(e).  Fifth, using the claimant's RFC, the ALJ will determine whether the claimant can still perform past relevant work.  Id. §§ 404.1520(f), 416.920(f).  If the claimant can do this type of work, she is not disabled.  Id.  If a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing other work that exists in the national economy, she is not disabled.  Id. §§ 404.1520(g), 416.920(g).

The ALJ issued a decision in September 2020.  At step one, the ALJ determined that Cabrera had not engaged in substantial gainful activity since her alleged onset date.

---

[5] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations.  *Id*. §§ 404.1545(a), 416.945(a).

At step two, the ALJ found Cabrera possesses the following severe impairments: anxiety disorder, panic disorder without agoraphobia, bipolar disorder, and borderline personality disorder.

At step three, the ALJ found that despite Cabrera's severe impairments, she did not have an impairment or combination of impairments that met or medically equal the severity of an impairment listed in applicable regulations.

At step four, after considering the record and medical evidence, the ALJ found that Cabrera had the RFC to perform medium work[6] with the following caveats:

> Cabrera can lift and carry fifty pounds occasionally and up to twenty-five pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; occasionally work at unprotected heights or around moving mechanical parts; mentally perform simple, routine, and repetitive tasks, but not at production rate pace; make simple work-related decisions; occasionally interact with supervisors, coworkers, and the public; and could never climb ladders, ropes, or scaffolds.

Based on these findings, the ALJ determined that Cabrera could not perform her past work as a cashier checker. The ALJ

---

[6] "Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. If someone can do medium work, [the SSA can] determine that he or she can also do sedentary and light work." *Id.* §§ 404.1567(c), 416.967(c).

then determined that Cabrera can perform jobs existing in significant numbers in the national economy, specifically representative occupations such as laundry worker, floor worker, and general laborer. As a result, the ALJ found Cabrera not disabled.

To create the RFC, the ALJ considered the opinions of Cabrera's physicians. Relevant to this appeal, the ALJ assigned some weight to parts of Dr. Ruiz's opinions but little or no weight to Dr. Ruiz's conclusions that Cabrera: had marked limitations in ability for social functioning and ability to concentrate; would experience four or more episodes of decompensation within a 12-month period for at least two weeks duration; and likely be absent from work more than four days per month. The ALJ concluded that Dr. Ruiz gave extreme limitations and the objective medical records conflicted with his opinions.

Cabrera then requested the Appeals Council review the ALJ's decision. The Appeals Council denied Cabrera's request for review, making the ALJ's decision the final decision of the Commissioner. Cabrera appealed to the district court, which affirmed the ALJ's denial of Cabrera's DIB and SSI. Cabrera timely appealed.

## II.  Standards of Review

When "an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (alteration adopted). We review a social security disability case to determine whether the Commissioner's decision is supported by substantial evidence and review de novo whether

the ALJ applied the correct legal standards. *Id.* at 1313–14. "Our review is 'the same as that of the district court,' meaning we neither defer to nor consider any errors in the district court's opinion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (internal citations omitted) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

Substantial evidence is relevant evidence, less than a preponderance but greater than a scintilla, that "a reasonable person would accept as adequate to support a conclusion." *Viverette*, 13 F.4th at 1314. We "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the ALJ." *Id.* (alteration adopted). But a decision is not based on substantial evidence if it focuses on one aspect of the evidence while disregarding contrary evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

## III.  Discussion

Cabrera contends that the ALJ erred when assessing Dr. Ruiz's opinions. Because she protectively filed her claims before March 27, 2017, her claims are governed under the treating physician rule, meaning the ALJ could only discount Dr. Ruiz's opinions for good cause, which Cabrera argues the ALJ failed to do. 20 C.F.R. § 404.1527. She argues that the ALJ selectively used generalized statements that showed she was cooperative, coherent, and had good thought processes, and ignored other parts of the record that showed she was depressed, anxious, and significantly limited in social interactions.

To determine whether a claimant is disabled, the ALJ considers medical opinions from acceptable medical sources, including licensed physicians and psychologists. 20 C.F.R. §§ 404.1502(a)(1)-(2), 416.902(a)(1)-(2). For claims filed before March 27, 2017, these medical opinions should reflect judgments about the nature and severity of the claimant's impairments, including symptoms, diagnoses, prognoses, and physical or mental restrictions. *Id*. §§ 404.1527(a)(1), 416.927(a)(1).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Thus, this Court will not affirm merely because some rationale supports the ALJ's conclusion if "the ALJ fails to state with at least some measure of clarity the grounds for his decision." *Id*. (quotation marks omitted).

A "treating source" is a physician or other medical source who has provided the claimant with medical treatment and has, or previously had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The ALJ must give a treating physician's opinion "substantial or considerable weight unless there is good cause to discount [it]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quotation marks omitted) (superseded by regulation after March 27, 2017, when the treating physician rule stopped applying). Good cause to give a treating physician's opinion less than substantial or considerable weight exists when: (1) the evidence does not bolster the treating

physician's opinion; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. *Id.* When good cause exists, the ALJ may reject a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Id.* (quotation marks omitted and alteration adopted).

When the ALJ decides that a treating physician's opinion does not warrant controlling weight, he then must decide what weight to give the opinion based on several factors, including: (1) the length of treatment and frequency of evaluation; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinions; (4) consistency with the record as a whole; (5) specialization in the medical area at issue; and (6) any other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Cabrera's central argument focuses on the ALJ's selection of generalized statements showing normal findings about her condition without considering all the evidence that showed she had extensive mental illness that impacted her life and ability to work. Despite the deferential standard as to the ALJ's decision, we find that Cabrera's medical records were consistent with Dr. Ruiz's opinions and the ALJ erroneously discounted Dr. Ruiz's opinions. The ALJ chose generalized findings to contradict Dr. Ruiz's opinions and to support the ALJ's finding that Cabrera is not disabled. As we discussed in *Simon*, generalized findings cannot be used to

create inconsistences that justify discounting a treating physician's opinion.

In *Simon*, we concluded that an ALJ misunderstands mental illness when relying on "a snapshot of any single moment[, which] says little about a person's overall condition" when the person is suffering from bipolar disorder. 7 F.4th at 1106 (alteration adopted). An ALJ who relies on generalized statements from a medical document saying a claimant is "stable on medication" to show inconsistency with the record does not consider the nature of bipolar disorder, which is characterized by a fluctuation of symptoms. *Id.* A "good day" or "good months" do not mean that the core condition has been treated. *Id.*

Additionally in *Simon*, the ALJ discounted Simon's treating physician's opinions because of inconsistency with clinical findings, specifically regarding Simon's capabilities of having fair insight, good judgment, and other attributes. *Id.* at 1109. We stated that capabilities such as these "say little to nothing about the capacity to work of a person suffering from the types of mental illnesses with which Simon was diagnosed." *Id.* We explained that "highly generalized statements that a claimant was 'cooperative' during examination, . . . or that he showed 'fair insight' and 'intact cognition,' ordinarily will not be an adequate basis to reject a treating physician's opinion." *Id.* at 1107. An ALJ must account for the differences between a home or clinic setting and a more stressful work setting, concluding that a claimant's ability to eat, put on clothes, and purchase necessities does not "say much about whether a

person can function in a work environment." *Id.* at 1108. An ALJ must identify a genuine inconsistency with other medical findings in the record in order to reject a treating physician's opinions. *Id.* at 1107.

Here, the ALJ improperly discounted Dr. Ruiz's opinions in favor of using other treatment records that showed Cabrera was cooperative and oriented to all spheres. The ALJ erroneously used general statements about Cabrera's cooperation and orientation to discount Dr. Ruiz's opinions, referring to Cabrera's appearance (i.e., her ability to dress herself appropriately), her ability to make good eye contact, and her stability while on medication. But Cabrera's functioning reports show that she needs reminders to shower and groom herself. Her ability to be dressed appropriately once a month to see the doctor in the office or at her home does not reflect the severe limitations her medical conditions have in her everyday life.

Dr. Ruiz treated Cabrera from March 2017 through at least May 2020. Although Dr. Ruiz at times noted Cabrera was stabilized on medication, had adequate concentration, adequate judgment, and was sleeping, he noted at other times that Cabrera had poor concentration, diminished judgment, and difficulties sleeping. As discussed above, Dr. Ruiz consistently found Cabrera to be anxious and depressed and noted frequently that Cabrera had racing thoughts, compulsive behavior, and extensive mood swings. As we noted in *Simon*, bipolar disorder is explicitly characterized by a fluctuation in a patient's symptoms, and a good day does not imply that

the fundamental condition has been treated. 7 F.4th at 1106. Cabrera's Adult Functioning Reports and testimony reflect her daily limitations, which are consistent with Dr. Ruiz's appointment notes.

Dr. Ruiz's assessments from June 2018, September 2018, and August 2019 are consistent with each other and show that Cabrera would have significant limitations and hindrances in a work environment. Also, by Cabrera's own admission, the only time she leaves her house is to attend doctor's appointments. By discounting Dr. Ruiz's opinions, the ALJ appears to have discounted the person who likely has the most insight into Cabrera's day-to-day life.

While the ALJ states that contemporary treatment records are inconsistent with Dr. Ruiz's opinions, the most recent treatment records reflect that Cabrera's conditions are getting worse. At Cabrera's June 2020 appointment, Dr. Charneco noted that Cabrera had increased anxiety, mood swings, and continued difficulty being around other people. Cabrera herself reported that she felt worse. Dr. Charneco is the only other doctor who consistently saw Cabrera for the same amount time as Dr. Ruiz. Dr. Charneco had similar findings to Dr. Ruiz. As we noted in *Simon*, the ALJ must find a genuine inconsistency with other medical findings before rejecting a treating physician's opinions as inconsistent. *Id*. at 1107. In discounting Dr. Ruiz's opinions as inconsistent with contemporary treatment records, the ALJ also disregarded Dr. Charneco's findings.

Further, the ALJ stated that Cabrera's cycling injury shows inconsistency with Dr. Ruiz's opinions.  Cabrera conceded during the second hearing that she regularly cycled with others prior to the alleged onset date in 2015.  But from 2015 onward, the only mention in the record of Cabrera cycling in a group was when she went to the hospital for an injury in August 2019.  Cabrera consistently testified that she did not have any friends and rarely left her home.  The ALJ's reliance on this hospital record is a clear example of the ALJ relying on a "snapshot of [a] single moment" from the record, which as we stated in *Simon*, is not enough to discount a treating physician's opinion.  *Id.* at 1106.

Moreover, the ALJ relied on Cabrera's attendance at her medical appointments to find that Cabrera never missed a scheduled appointment.  Yet the record does not reveal the full history, such as any rescheduled or missed appointments.  The record only includes notes from the attended appointments themselves.  The record shows that Cabrera was driven to appointments and for a period of time, the appointments took place in Cabrera's home.  The ALJ improperly used Cabrera's ability to attend appointments as indicative of her ability to regularly work.  We remarked in *Simon* that an ALJ must account for the differences between a treatment or home environment and a daily work environment, which the ALJ here did does not do.  *Id.* at 1107.

If the ALJ seeks to discount Dr. Ruiz's opinions, the ALJ must find a genuine inconsistency elsewhere in the record.  The ALJ must review the record with consideration to the realities of

how bipolar disorder manifests in patients. The ALJ must rely on the full range of evidence from Cabrera's doctors over this time period, rather than cherry picking records from single days or treatments to support a conclusion. Based on our careful review of the record, the medical treatment notes and Cabrera's own disclosures are consistent with Dr. Ruiz's opinions.

## IV.  Conclusion

Accordingly, we reverse and remand to the district court with instructions to vacate the Commissioner's decision and to remand to the Commissioner for further proceedings consistent with this opinion.

**REVERSED and REMANDED WITH INSTRUCTIONS.**