[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11837
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cv-02282-EAK-TBM

SANDRA M. GRAY,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 30, 2013)

Before TJOFLAT, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Sandra Monique Gray appeals the district court's order affirming the Social

Security Administration's denial of her application for disability insurance benefits

and supplemental security income.  On appeal, Gray argues that the administrative law judge ("ALJ") erred by concluding that she did not suffer from a severe cervical spine impairment and by omitting limitations from that impairment in the RFC assessment, and also erred in weighing the medical opinion evidence.  After careful review, we affirm.

We review the ALJ's decision in order to determine whether the ALJ applied proper legal standards and whether the factual findings are supported by substantial evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial evidence is "more than a scintilla" and is relevant evidence that a reasonable person would accept as adequate to support a conclusion that a claimant is or is not entitled to benefits.  Id.  We may not reweigh the evidence and decide facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence preponderates against it.  See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  By contrast, we give no deference to the ALJ's legal conclusions, which are reviewed with "close scrutiny."  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).  An ALJ's failure to apply the correct law or provide sufficient reasoning so as to determine that the proper legal analysis has been conducted requires reversal.  Id.  However, even if the ALJ made a factual error or applied an improper legal standard, we may conclude that such errors are harmless in the

context of a particular case. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (concluding that the ALJ erred in stating the claimant was closely approaching advanced age and in considering the claimant's prior job as an assembler, contrary to the regulations, but holding that these errors were harmless).

First, we are unpersuaded by Gray's claim that the ALJ erred in its conclusions concerning Gray's alleged severe cervical spine impairment. The Commissioner uses a five-step, sequential evaluation process to determine whether a claimant is disabled. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011). This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe and medically determinable impairment; (3) has an impairment, or combination thereof, that meets or equals a Listing, and meets the duration requirement; (4) can perform her past relevant work, in light of her residual functional capacity ("RFC"); and (5) can make an adjustment to other work, in light of her RFC, age, education, and work experience. Id.; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

------------

Step two is a threshold inquiry that "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). It thus "acts as a filter" to weed out claims where there are no substantial impairments at all. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir.

3

1987).  To show a "severe" impairment, a claimant must show "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c); see id. §§ 404.1521(b), 416.921(b) (defining the ability to perform basic work activities as "the abilities and aptitudes necessary to do most jobs," examples of which including walking, standing, sitting, and responding appropriately to usual work situations).  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); see McDaniel, 800 F.2d at 1031 (describing the claimant's burden to show a severe impairment as "mild").  If any impairment or combination of impairments is qualifies as "severe," step two is satisfied and the claim advances to step three. Jamison, 814 F.2d at 588.  Once a case advances beyond step two, the ALJ must consider all impairments, severe or not, at step three and in assessing the RFC. Bowen v. Heckler, 748 F.2d 629, 634-35 (11th Cir. 1984).

Where a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged

4

pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise" to the claimed symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). In weighing the evidence, credibility determinations "are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). If the ALJ discredits the claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so"; failure to do so "requires, as a matter of law, that the testimony be accepted as true." Wilson, 284 F.2d at 1225.

Here, we need not consider whether substantial evidence supports the ALJ's conclusion at step two -- that Gray's cervical spine impairment was not a severe impairment -- because even if there was error, it would be harmless. In assessing Gray's RFC, the ALJ found that Gray had severe impairments and that the step two test was satisfied, and then specifically considered and discussed the symptoms that Gray alleged stemmed from a cervical spine impairment elsewhere in the five-step sequential process. See Jamison, 814 F.2d at 588. The ALJ thus performed the analysis that would have been required had he determined a cervical spine impairment was severe at step two. See id. The ALJ specifically discussed the possible existence of osteomyelitis or bone infection, considered Gray's complaints that she claimed stemmed from a spinal condition -- extreme pain, sleeplessness, numbness in limbs and fingers, cramps, spasms, difficulty ambulating and sitting, trouble bending her neck, tingling, and tenderness on her

left side -- and also discussed the objective medical evidence and medical opinion testimony.  Accordingly, even if the ALJ erred at step two, any error was harmless.

To the extent that Gray argues the RFC assessment did not take into account her limitations in manipulation that stemmed from a cervical spine impairment, the ALJ's RFC assessment is supported by substantial evidence.  As a preliminary matter, Gray appears to only argue that her RFC would be "more accurate[]" if a severe cervical spine impairment had been determined at step two.  However, Dr. Shriver opined that Gray's very mild median mononeuropathy did not explain her reported symptoms, and was in fact only expected to cause mild and intermittent tingling in her hand depending on Gray's activity and hand position.  Further, two physical RFC assessments concluded that Gray had no manipulative limitations. The ALJ also concluded that Gray's statements regarding her symptoms were not credible to the extent they were inconsistent with the RFC, considering her wide variety of activities of daily living, which included housework, going to community meetings, and attending to her personal care.  See Moore, 405 F.3d at 1212 (explaining that the ALJ is entitled to make credibility findings). Accordingly, the RFC assessment did take into account objectively determinable manipulative limitations, and is otherwise supported by substantial evidence.

We also find no merit in Gray's claim that the ALJ erred in weighing the medical opinion evidence.  In assessing medical evidence, the ALJ must "state

with particularity the weight he gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ must "accord considerable weight to [the claimant's] treating physician's opinion absent good cause for not doing so." Id. at 279-80; see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing that medical opinion treating sources are entitled to controlling weight if well-supported by medically acceptable objective evidence and not inconsistent with the other substantial evidence in the record). The opinions of nonexamining, reviewing physicians, when contrary to the opinion of a treating or examining physician, are entitled to little weight and do not, "taken alone, constitute substantial evidence." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985); Sharfarz, 825 F.2d at 280. "Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding." Sharfarz, 825 F.2d at 280. Further, whether a claimant is disabled or unable to work is an issue reserved to the Commissioner as an administrative finding, and a medical source opinion on this issue is not a "medical opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d).

As the record shows here, the ALJ adequately explained the weight assigned to different medical opinions and the reasoning behind his decisions. First, the opinions of Dr. Stengel, Dr. Moukkadem, and Dr. Finn that Gray was unable to work are not entitled to controlling weight because disability is an issue reserved to the Commissioner as an administrative finding, and in any event the ALJ

7

adequately explained why the doctors' conclusions were entitled to little weight. See 20 C.F.R. §§ 404.1527(d), 416.927(d); Sharfarz, 825 F.2d at 279. Dr. Stengel opined that Gray's spine looked good for her age, and also explained that his role was only to evaluate whether surgical intervention was necessary and that disability needed to be addressed by someone who was experienced and able to determine whether she was truly able to go back to work. The ALJ thus gave little weight to Dr. Stengel's statements that Gray was temporarily unable to work due to her cervical spine issues and pain management. The ALJ concluded that Dr. Moukaddem's opinion that Gray could not work due to pain and numbness was in conflict with the record as a whole, which suggested that Gray was able to perform a wide variety of activities of daily living. The ALJ also pointed out that Dr. Finn did not note any of Gray's specific restrictions to support his conclusion of disability, especially given his uncertainty whether Gray had an infectious or degenerative disc condition and his conclusion that despite unspecified limited mobility in her cervical and lumbar spine she was neurologically intact and stable. The ALJ thus adequately explained the weight he assigned to these opinions. See Sharfarz, 825 F.2d at 279.

As for Gray's arguments regarding the opinions of Dr. Shefsky and Dr. Renny, Dr. Shefsky was an examining physician who concluded that Gray had a full range of motion in her cervical and lumbar spine. See Broughton, 776 F.2d at

8

962 ("[T]he opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." (quotation omitted)).    Although Dr. Shefsky appears to have not had the benefit of reviewing MRI evidence, this does not undermine the range of motion results of his physical examination, and the ALJ only mentioned Dr. Shefsky's examination for the purpose of showing that physical examination did not reveal limitations in her back or in other areas where she complained of symptoms.  Dr. Shefsky's opinion regarding Gray's limitations of motion in her cervical spine is not contrary to the record as a whole, given Gray's reports of being able to do household chores and attend social events. Further, Dr. Renny's physical RFC examination did not rely solely on Dr. Shefsky's report, but also reviewed MRI reports and the records of at least one other doctor, and noted Gray's allegations of cervical degenerative disc disease. Dr. Renny's opinion was also consistent with the evidence as a whole, given that Dr. Shefsky concluded Gray had no limitations in the movement of her cervical spine, Dr. Stengel described her cervical spine as typical for her age, and Gray reported activities of daily living that included household chores, attending events, shopping, and walking.    See id. (stating that the reports of nonexamining physicians do not, if "taken alone," constitute substantial evidence).  Accordingly, the ALJ did not err by giving significant weight to the opinion of Dr. Renny.

**AFFIRMED.**