[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11762
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cv-00118-CSC


CHRISTINA M. SANCHEZ,

Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(February 8, 2013)

Before HULL, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Christina M. Sanchez, through counsel, appeals from the district court's order affirming the Administrative Law Judge's (ALJ) denial of disability insurance benefits (DIB), 42 U.S.C. §§ 401–434, and supplemental security income (SSI), 42 U.S.C. §§ 1381–1383f, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  On appeal, Sanchez argues that the ALJ erroneously failed to consider her diagnosis of Borderline Personality Disorder (BPD) in the analysis and, in particular, failed to identify BPD as a severe impairment at step two of the sequential evaluation.[1]

In Social Security appeals, we review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal

---

[1] Notably, Sanchez has not explicitly challenged the weight given to the medical opinions by the ALJ, nor the ALJ's credibility determination.  Sanchez also has not expressly challenged the ALJ's ultimate decision that, because Sanchez would not be disabled if she stopped her substance use, her substance use disorder was a contributing factor material to the disability determination.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) ("[T]he claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination.").  As a result, Sanchez has effectively abandoned any challenge to these decisions.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

quotation marks omitted).  "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."  *Id.* (citation omitted).  Even if a preponderance of the evidence weighs against the Commissioner's decision, we must affirm if substantial evidence supports it.  *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

We have also declined to remand for express findings when doing so would be a "wasteful corrective exercise" in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.  *Ware v. Schweiker*, 651 F.2d 408, 412–13 (5th Cir. Unit A 1981); *see also Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to erroneous statements of fact made by the ALJ).  On the other hand, the ALJ's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  When the ALJ "fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'"  *Winschel*, 631 F.3d at 1179 (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive [social security and disability insurance] benefits."

*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In determining whether a claimant has proven that she is disabled, the ALJ must complete a five-step sequential evaluation process and determine:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004)); 20 C.F.R. §§404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

At step two, the ALJ must make a "threshold inquiry" as to the medical severity of the claimant's impairments. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1520a(a), 404.1523, 416.920(a)(4)(ii), (c), 416.920a(a), 416.923. "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, such as the abilities and aptitudes

4

necessary to do most jobs.  20 C.F.R. §§ 404.1521(a)–(b), 416.921(a)–(b).  In other words, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031; *see Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam) (noting that the mere existence of impairments does not reveal the extent to which they limit the claimant's ability to work).  Pertinent examples of "basic work activities" include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

During steps three through five, the ALJ must consider the claimant's medical condition as a whole.  *Jamison*, 814 F.2d at 588.  At step three, if the ALJ determines that a claimant is disabled but also makes a finding that substance abuse is involved, the ALJ "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).  The key factor in this inquiry is whether the claimant would still qualify as disabled if she stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).  The ALJ must evaluate which of the claimant's physical and mental limitations that supported the original

disability determination would remain absent drug or alcohol use.  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If a claimant would no longer be disabled if she stopped using drugs or alcohol, then the claimant's substance abuse is considered to be a "contributing factor material to the determination of [her] disability," and she has therefore failed to meet her burden and prove that she is disabled.  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

Before reaching step four, the ALJ must assess the claimant's RFC—which is the most work the claimant can do despite her physical and mental limitations—by considering all of the relevant medical and medically determinable impairments, including any such impairments that are not "severe."  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1)–(3), 416.920(e), 416.945(a)(1)–(3).  In assessing the RFC, the ALJ must consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work.  20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4).  At step five, the ALJ must pose hypothetical questions, including all of the claimant's impairments and resulting limitations, to a Vocational Expert (VE).  *See Winschel*, 631 F.3d at 1180.  If the VE opines that there are jobs in the national economy that the claimant can perform, the claimant must prove that she is unable to perform those jobs in order to be found disabled.  *See Phillips*, 357 F.3d at 1239.

First and foremost, the ALJ's determination that Sanchez's substance abuse was a contributing factor material to the determination of her disability—which is supported by substantial evidence in the record—was alone sufficient to foreclose her disability claim. *See* 42 U.S.C. § 423(d)(2)(C), 1382c(a)(3)(J). Although the mental health records at Montgomery Mental Health made no mention of substance abuse, and Sanchez denied her substance abuse to Dr. Karl Kirkland, Sanchez tested positive for opiates, cannabis, cocaine, and benzodiazepine while undergoing treatment at Baptist Medical Center South. Sanchez also admitted to Dr. Phillip Golomb that she had engaged in daily marijuana use since the age of 15, and admitted to Dr. Kirkland that she had a cocaine problem in her teen years.[2] Sanchez even testified that she had smoked marijuana daily since the age of 17, and that she used marijuana ten times in the interim period between the initial and supplemental ALJ hearings. Moreover, Dr. Doug McKeown opined that if Sanchez refrained from the use of illicit drugs, she would have no more than mild limitations in her daily functioning.

Second, even absent the conclusion that Sanchez's substance abuse was a contributing factor material to the determination of her disability, the ALJ's failure to classify Sanchez's alleged BPD as a severe impairment at step two was a

---

[2] Sanchez's cocaine-positive urinalysis at Baptist Medical Center South suggests that she used cocaine as recently as 2007. Sanchez maintains that her cocaine use was not intentional, and that the marijuana she smoked prior to the urinalysis must have come into contact with cocaine.

determination supported by substantial evidence.  Sanchez, to the contrary, vehemently argues that even if she abstained from substance use, she would still be disabled due to the severity of her BPD diagnosis, and therefore the ALJ erred by failing to consider this impairment.  However, only Dr. Kirkland—out of numerous doctors at multiple institutions who examined Sanchez over the course of 17 years, since her first hospitalization at the age of 13—ever diagnosed Sanchez with BPD.[3]  All of Sanchez's other doctors diagnosed her with some combination of mood disorder, polysubstance abuse, or bipolar disorder, and all of these diagnoses were consistent with the ALJ's findings.

Moreover, the Diagnostic and Statistical Manual of Mental Disorders—on which Sanchez heavily relies in support of her BPD diagnosis—specifically states that BPD "often co-occurs with Mood Disorders," and warns that "[b]ecause the . . . presentation of Borderline Personality Disorder can be mimicked by an episode of Mood Disorder, [medical professionals] should avoid giving an additional diagnosis of Borderline Personality Disorder . . . without having documented that the pattern of behavior has an early onset and a long-standing course."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 653 (4th ed. text rev. 2000) [hereinafter DSM-IV].  The DSM-IV also specifically states that

---

[3] Although Allen Downs, a Mental Health Therapist, diagnosed Sanchez with "personality disorder, not otherwise specified, with borderline and dependent features," he did not render an official diagnosis of BPD.  Downs is also not a medical doctor.

BPD "must also be distinguished from **symptoms that may develop in association with chronic substance use**." *Id.* at 654 (emphasis in original). Ultimately, the ALJ's determination that BPD was not a severe impairment was supported by substantial evidence in the record, based on (1) the limited evidence of BPD in Sanchez's medical history, (2) the evidence that any BPD symptoms may have actually been caused by mood disorders or substance abuse, and (3) evidence that Sanchez "misled [Dr. Kirkland] concerning her substance abuse."

Finally, even if the ALJ erred by failing to identify BPD as a severe limitation at step two, the ALJ properly considered the symptoms and limitations that would result from BPD at the latter stages of the five-step disability evaluation. Specifically, after the ALJ listed numerous other severe mental impairments at step two, the ALJ acknowledged that Dr. Kirkland diagnosed Sanchez with BPD. Moreover, both the ALJ's RFC assessment and the hypothetical questions posed to the VE accounted for all of Sanchez's mental limitations, including any limitations and symptoms that might have been caused by or were consistent with BPD. *See* DSM-IV at 650–52 (listing the diagnostic criteria and diagnostic features of BPD). Sanchez has failed to show what additional limitations her BPD may have caused, above and beyond the limitations manifested by her other severe mental disorders, and how any such limitations were independent of her substance abuse. For the foregoing reasons, the ALJ's

9

decision that Sanchez was not disabled is supported by substantial evidence in the record.

**AFFIRMED.**