IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 SOUTHERN DIVISION 

DAVID WAYNE LEE, ) 
 ) 
Plaintiff, ) 
 ) 
v. ) CASE NO. 1:19-cv-838-SRW 
 ) 
ANDREW SAUL, ) 
Commissioner of Social Security, ) 
 ) 
Defendant. ) 

 MEMORANDUM OPINION AND ORDER 
I. Introduction 
Plaintiff David Wayne Lee commenced this action on October 31, 2019, pursuant 
to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of 
the Commissioner of Social Security (“the Commissioner”) denying his application for a 
period of disability and disability insurance benefits (“DIB”) under Title II of the Social 
Security Act (“the Act”). See Docs. 1, 12, 13.1 Plaintiff filed his application for benefits on 
April 8, 2018, alleging that he became disabled on June 15, 2016. Doc. 15-5; R. 152. 
Plaintiff then requested and received a hearing before an Administrative Law Judge 
(“ALJ”). Doc. 15-4 at 7, 11; R. 101, 105. On April 23, 2019, ALJ Robert Waller issued an 
adverse decision after holding a hearing on plaintiff’s application. Doc. 15-2 at 8-10; R. 7-
9. On September 5, 2019, the Appeals Council denied plaintiff’s request for review, and 
the ALJ’s decision became the final decision of the Commissioner. See Doc. 15-2 at 2-4; 
R. 1-3; Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). 

1 Plaintiff filed a brief (Doc. 12), and subsequently filed a corrected version (Doc. 13). All 
In the instant appeal, plaintiff asks the court to reverse and remand the 
Commissioner’s decision under the fourth sentence of 42 U.S.C. § 405(g) with instructions 
to evaluate the residual functional capacity properly, consider all impairments properly, 

and issue a new decision based on substantial evidence and proper legal standards—or, in 
the alternative, to remand this cause to the Commissioner under the sixth sentence of 42 
U.S.C. § 405(g) with instructions to evaluate the new and material evidence properly and 
issue a new decision based on substantial evidence and proper legal standards. See Docs. 
1 at 2; 13 at 13. This case is ripe for review pursuant to 42 U.S.C. §§ 405(f) and 1383(c)(3). 
Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties 
have consented to the conduct of all proceedings and entry of a final judgment by the 

undersigned United States Magistrate Judge. See Docs. 6, 7. Based on its review of the 
parties’ submissions, the relevant law, and the record as a whole, the court concludes that 
the Commissioner’s decision is due to be affirmed. 
II. Standard of Review 
The court’s review of the Commissioner’s decision is a limited one. This court must 
find the Commissioner’s decision conclusive if it is supported by substantial evidence. 42 
U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). “Substantial 

evidence is more than a scintilla,” but less than a preponderance, “and is such relevant 
evidence as a reasonable person would accept as adequate to support a conclusion.” 
Crawford v. Comm’r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (“Even if the 
evidence preponderates against the Commissioner’s findings, [a reviewing court] must 
affirm if the decision reached is supported by substantial evidence”) (citations omitted). 

 2 
The court will reverse the Commissioner’s decision if it is convinced that the decision was 
not supported by substantial evidence or that the proper legal standards were not applied. 
Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not 

warranted merely because the court itself would have reached a result contrary to that of 
the factfinder. See Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A 
reviewing court may not look only to those parts of the record which support the decision 
of the ALJ, but instead must view the record in its entirety and take account of evidence 
which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179, 
1180 (11th Cir. 1986). 
[The court must] . . . scrutinize the record in its entirety to determine the 
reasonableness of the [Commissioner’s] . . . factual findings. . . . No similar 
presumption of validity attaches to the [Commissioner’s] . . . legal 
conclusions, including determination of the proper standards to be applied in 
evaluating claims. 

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). 
To qualify for disability benefits and establish his or her entitlement for a period of 
disability, a person must be unable to: 
engage in any substantial gainful activity by reason of any medically 
determinable physical or mental impairment which can be expected to result 
in death or which has lasted or can be expected to last for a continuous period 
of not less than 12 months. 

42 U.S.C. § 423(d)(1)(A).2 To make this determination, the Commissioner employs a five-
step, sequential evaluation process. See 20 C.F.R. §§ 404.1520; 416.920. 

2 A “physical or mental impairment” is one resulting from anatomical, physiological, or 
psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory 
diagnostic techniques. 42 U.S.C. § 423(d)(3). 

 3 
(1) Is the person presently unemployed? 
(2) Is the person’s impairment severe? 
(3) Does the person’s impairment meet or equal one of the specific 
impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1 [the Listing of 
Impairments]? 
(4) Is the person unable to perform his or her former occupation? 
(5) Is the person unable to perform any other work within the economy? 
An affirmative answer to any of the above questions leads either to the next 
question, or, on steps three and five, to a finding of disability. A negative 
answer to any question, other than step three, leads to a determination of “not 
disabled.” 

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).3 
The burden of proof rests on the claimant through step four. See Phillips v. Barnhart, 
357 F.3d 1232, 1237–39 (11th Cir. 2004); see also Ellison v. Barnhart, 355 F.3d 1272, 
1276 (11th Cir. 2003). A claimant establishes a prima facie case of qualifying disability 
once he or she has carried the burden of proof from step one through step four. At step five, 
the burden shifts to the Commissioner, who must then show that there are a significant 
number of jobs in the national economy that the claimant can perform. Id. 
To perform the fourth and fifth steps, the ALJ must determine the claimant’s 
Residual Functional Capacity (“RFC”). Phillips, 357 F.3d at 1238–1239. The RFC is what 
the claimant is still able to do despite the claimant’s impairments and is based on all 
relevant medical and other evidence. Id. It may contain both exertional and nonexertional 
limitations. Id. at 1242–1243. At the fifth step, the ALJ considers the claimant’s RFC, age, 

3McDaniel is a supplemental security income (SSI) case. The same sequence applies to disability 
insurance benefits brought under Title II of the Social Security Act. Supplemental security income 
cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title 
II cases, and vice versa. See, e.g., Ware v. Schweiker, 651 F.2d 408, 412 (5th Cir. 1981); Smith v. 
Comm’r of Soc. Sec., 486 F. App’x 874, 876 n.* (11th Cir. 2012) (“The definition of disability and 
the test used to determine whether a person has a disability is the same for claims seeking disability 
insurance benefits or supplemental security income.”). 

 4 
education, and work experience to determine if there are jobs available in the national 
economy that the claimant can perform. Id. at 1239. To do this, the ALJ can use either the 
Medical Vocational Guidelines (“grids”), see 20 C.F.R. pt. 404 subpt. P, app. 2, or call a 

vocational expert (“VE”). Id. at 1239–40. 
The grids allow the ALJ to consider factors such as age, confinement to sedentary 
or light work, inability to speak English, educational deficiencies, and lack of job 
experience. Each factor can independently limit the number of jobs realistically available 
to an individual. Id. at 1240. Combinations of these factors yield a statutorily-required 
finding of “Disabled” or “Not Disabled.” Id. 
III. Administrative Proceedings 

Plaintiff was 47 years old at the time he filed his application for DIB and 48 at the 
time of the ALJ’s decision. See Doc. 15-2 at 39; R. 38. Plaintiff is a resident of Enterprise, 
Alabama, and lives in a house with his girlfriend and her thirteen-year-old son. See id. 
Plaintiff completed a GED and also completed a master mechanic certification. Id. at 40; 
R. 39. 
Plaintiff claims that his ability to work is limited by diabetes, a lower back injury, 
chronic pain, irritable bowel syndrome, hearing loss, depression, anxiety disorder, post-

traumatic stress disorder, nerve damage and nerve pain, high blood pressure, and insomnia. 
See Doc. 15-6 at 6; R. 172. Plaintiff previously worked as a master mechanic. See Docs. 
15-2 at 40-43, 15-6 at 7; R. 39-42, 173. Plaintiff last worked as commercial heavy line 
mechanic from 2004 to 2017, and was in the National Guard during that same period. See 

 5 
Doc. 15-2 at 40-42; R. 39-41. Plaintiff is still a member of the National Guard, and last 
drilled in June 2018. See Doc. 15-2 at 71-72; R. 70-71. 
Following the administrative hearing, and employing the five-step process, the ALJ 

found at step one that plaintiff had “not engaged in substantial gainful activity since July 
15, 2016, the alleged onset date[.]” Doc. 15-2 at 13; R. 12. At step two, the ALJ found that 
plaintiff suffered from the following severe impairments: “back disorder, right arm 
disorder, knee disorder, neuropathy, diabetes mellitus, post-traumatic stress disorder, and 
anxiety[.]” Id. At step three, the ALJ found that plaintiff “does not have an impairment or 
combination of impairments that meets or medically equals the severity of one of the listed 
impairments[.]” Id. at 14; R. 13. Next, the ALJ articulated plaintiff’s RFC as follows: 

the claimant has the residual functional capacity to perform light work as 
defined in 20 CFR 404.1567(b), except that he can frequently climb ramps 
and stairs; occasionally climb ladders, ropes, and scaffolds; and frequently 
balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle 
and finger with his right upper extremity. The claimant’s ability to 
understand, remember, and apply information and concentrate, persist, and 
maintain pace is limited to performing simple and routine tasks and his 
ability to use judgment is limited to simple work-related decisions. The 
claimant can interact with supervisors, co-workers, and the public 
occasionally and he can deal with occasional changes in a routine work 
setting. He can sustain concentration and attention for two-hour periods. 

Id. at 15-16; R. 14-15. At step four, based on the plaintiff’s RFC, the ALJ concluded that 
plaintiff “is unable to perform any past relevant work[.]” Id. at 22; R. 21. At step five, 
based on the plaintiff’s age, education, work experience, RFC, and the testimony of the 
VE, the ALJ found that “there are jobs that exist in significant numbers in the national 
economy that the plaintiff can perform[.]” Id. at 23; R. 22. Accordingly, the ALJ 
 6 
determined that plaintiff “has not been under a disability . . . from July 15, 2016, through 
the date of [the ALJ’s] decision[.]” Id. at 24; R. 23. 
IV. Issue on Appeal 

Plaintiff raises two issues on appeal which are discussed below in turn—whether 
the ALJ failed to consider plaintiff’s visual impairments properly, and whether the ALJ’s 
RFC was not based on substantial evidence. 
V. Discussion 
1. Visual Impairments 
Plaintiff argues that the ALJ failed to consider evidence of plaintiff’s visual 
impairments properly because the ALJ found that plaintiff’s glaucoma and cataracts were 

non-severe due to the absence of record evidence showing “significant abnormalities on 
physical examination” despite medical records which demonstrate that plaintiff obtained 
regular treatments for his visual impairments which were rated as moderately severe. See 
Doc. 13-1 at 9. 
The Commissioner argues that plaintiff did not meet his burden of proving that his 
visual impairments were severe impairments as defined by the social security regulations, 
and that substantial evidence supports the ALJ’s determination of plaintiff’s RFC and the 

ALJ’s finding that plaintiff’s subjective complaints of disabling symptoms and limitations, 
including those regarding his visual impairments, were unsupported by the record. See Doc. 
14 at 5. 

 7 
A severe impairment is an “impairment or combination of impairments which 
“significantly limits [a claimant’s] physical or mental ability to do basic work activities[.]” 
20 C.F.R. § 404.1520(c). Basic work activities include: 

(1) Physical functions such as walking, standing, sitting, lifting, pushing, 
 pulling, reaching, carrying, or handling; 
(2) Capacities for seeing, hearing, and speaking; 
(3) Understanding, carrying out, and remembering simple instructions; 
(4) Use of judgment; 
(5) Responding appropriately to supervision, co-workers and usual work 
 situations; and 
(6) Dealing with changes in a routine work setting. 

20 C.F.R. § 404.1522(b). The severity of a disability “must be measured in terms of its 
effect upon ability to work, and not simply in terms of deviation from purely medical 
standard of bodily perfection or normality.” McCruter v. Bowen, 791 F.2d 1544, 1547 (11th 
Cir. 1986). A severe impairment “must have lasted or must be expected to last for a 
continuous period of at least 12 months.” 20 C.F.R. § 404.1509. “An impairment can be 
considered not severe only if it is a slight abnormality which has such a minimal effect on 
the individual that it would not be expected to interfere with the individual’s ability to 
work, irrespective of age, education, or work experience.” Bridges v. Bowen, 815 F.2d 622, 
625 (11th Cir. 1987) (per curiam) (quoting Brady v. Heckler, 724 F.3d 914, 920 (11th Cir. 
1984) (internal quotations omitted)); see also 20 C.F.R. § 404.1522(a) (“An impairment or 
combination of impairments is not severe if it does not significantly limit your physical or 
mental ability to do basic work activities”). While the claimant bears the burden of proving 
he has a severe impairment or combination of impairments, the burden is a “mild” one, and 
a claimant only need show that his impairment is “not so slight and its effect is not so 
minimal.” McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see also Schink v. 
 8 
Comm’r of Soc. Sec., 935 F.3d 1245, 1265 (11th Cir. 2019) (citing McDaniel, 800 F.2d at 
1031)). 
Applying the foregoing standards, the court concludes that substantial evidence 

supports the ALJ’s determination that plaintiff’s visual impairments were not severe. The 
ALJ determined that, “[a]ccording to the pertinent record, the claimant has not experienced 
ongoing difficulties with the specific symptoms associated with these conditions,” and that 
they “have not imposed upon him more than minimal functional limitations.” Doc. 15-2 at 
14; R. 13. Plaintiff testified that he occasionally gets blurred vision every seven or eight 
hours, which requires him to remove his glasses and rub his eyes; that his night vision is 
“almost impossible”; and that he has reoccurring headaches which be believes may be 

caused by his vision problems. See Doc. 15-2 at 74-75; R. 73-74. Plaintiff also testified 
that he works on his own and his girlfriend’s vehicles, does regular household maintenance 
activities, and plays Playstation and Facebook video games and chess. See Doc. 15-2 at 65-
67; R. 64-66. Medical records from Dr. Kirk Sturridge show that plaintiff was diagnosed 
with “primary open-angle glaucoma bilateral moderate stage” and “combined form of age-
related cataract, bilateral” on September 18, 2018 (Doc. 15-13 at 71; R. 792), and that Dr. 
Sturridge confirmed these findings and continued to see plaintiff on November 28, 2018 

(Doc. 15-13 at 65; R. 786), December 20, 2018 (Doc. 15-13 at 62; R. 783), January 21, 
2019 (Doc. 15-13 at 59; R. 780), and February 25, 2019 (Doc. 15-13 at 56; R. 776). Dr. 
Sturridge’s reports describe plaintiff’s glaucoma as “stable” and self-described by plaintiff 
as moderately severe. Medical records from Dr. J. Christopher McNeal on February 19, 
2019 note that plaintiff’s glaucoma severity was “moderate” in both eyes, but that plaintiff 

 9 
retained 99% and 96% of his visual field index in his right and left eyes, respectively, and 
that the severity of plaintiff’s visual field loss was “minimal” in the right eye and “mild” 
in the left eye. See Doc. 15-15 at 32; R. 897. The medical records do not establish that 

Plaintiff’s visual impairments can be expected to interfere with his ability to work, 
irrespective of age, education, or work experience. Plaintiff has, therefore, filed to prove 
that his visual impairments were severe impairments. 
2. Contact with the Public 
Plaintiff argues that the ALJ’s RFC was not based on substantial evidence because 
the ALJ “improperly and implicitly rejected” a portion of medical opinion given by Dr. 
Veits without providing any rationale for his implicit rejection. See Doc. 13-1 at 13. 

Specifically, plaintiff argues that the ALJ failed to consider Dr. Veits’ opinion that plaintiff 
could only maintain casual contact with the public at step five in determining whether other 
work that plaintiff could do exists in significant numbers in the national economy. See Doc. 
18 at 1-2. 
The Commissioner argues that the jobs provided for by the VE and ALJ at step 
five—garment folder, linen grader, and wearing apparel shaker—sufficiently accounted 
for Dr. Veits’ opinion regarding plaintiff’s limitations on contact with the public, and that 

plaintiff failed to prove that he could not perform the jobs identified by the ALJ. See Doc. 
14 at 12. 
On January 18, 2017, the Social Security Agency published revisions to its 
regulations regarding the evaluation of medical evidence, which apply to claims filed on 
or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence 

 10 
82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending 
and correcting the final rules published at Fed. Reg. 5844). Plaintiff filed his application 
for benefits on April 8, 2018. Doc. 15-5; R. 152. Therefore, the revisions apply in the 

instant case. Under the new regulations, there are five categories of evidence: (1) objective 
medical evidence, such as medical signs, laboratory findings, or both, as defined in § 
404.1502(f); (2) medical opinions, which are statements from a medical source about what 
a claimant can still do despite his or her impairment(s) and whether a claimant has one or 
more impairment-related limitations or restrictions in the abilities listed in 20 C.F.R. § 
404.1513(2)(i)-(iv); (3) other medical evidence, such as judgments about the nature and 
severity of a claimant’s impairments, medical history, clinical findings, diagnosis, 

treatment prescribed with response, or prognosis; (4) evidence from nonmedical sources, 
such as forms and administrative records from nonmedical sources, including from the 
claimant herself; and (5) prior administrative medical findings, which are findings, other 
than the disability determination, about a medical issue made by Federal and State agency 
medical and psychological consultants at a prior level of review in a claimant’s disability 
claim based on their review of the record. See 20 C.F.R. § 404.1513(a)(1)-(5). 
The revisions state that the Commissioner “will not defer or give any specific 

evidentiary weight, including controlling weight, to any medical opinion(s) or prior 
administrative medical finding(s), including those from . . . medical sources.” 20 C.F.R. § 
404.1520c(a). The most important factors to be considered are those of supportability and 
consistency, and the persuasiveness of any medical opinion or administrative finding is 
considered in light of those two factors. Id. §§ 404.1520c(a), (c)(1)-(2). The ALJ will also 

 11 
consider the relationship of the source to the claimant, the specialization of the source, and 
other factors such as evidence showing that a source has familiarity with other evidence in 
the claim and with the disability program’s policies and evidentiary requirements, whether 

new evidence makes the opinion or finding more or less persuasive. Id. §§ (c)(3)-(5). While 
the Commissioner “will explain how [the ALJ] considered the supportability and 
consistency factors for a medical source’s medical opinions or prior administrative medical 
findings,” the ALJ “may, but [is] not required to, explain how they considered the factors 
in (c)(3)-(5) when articulating how they consider medical opinions and prior administrative 
medical findings. Id. § 20 C.F.R. 404.1520c(b)(2). 
Dr. Harold Veits, the state agency consultant who produced a disability 

determination explanation on August 9, 2018 after reviewing plaintiff’s medical record, 
stated that plaintiff was “moderately limited” in his ability to interact appropriately with 
the general public, and that plaintiff’s “contact with the general public should be casual.” 
Doc. 15-3 at 12; R. 91. The ALJ found Dr. Veits’ opinions to be persuasive “in that they 
were consistent with the medical record presented at the hearing level, including the 
claimant’s response to treatment and the failure of the record to display worsening of the 
claimant’s medical conditions,” and found that Dr. Veits “has program knowledge as a 

basis for drawing sound conclusions.” The ALJ’s RFC determination took Dr. Veits’ 
medical opinion into account, indicating that “[t]he claimant can interact with supervisors, 
co-workers, and the public occasionally[.]” Doc. 15-2 at 16; R. 15. The ALJ noted that “the 
claimant’s statements concerning the intensity, persistence, and limiting effects of these 
symptoms are not entirely consistent with the medical evidence and other evidence of 

 12 
record[.]” Doc. 15-2 at 16; R. 15. The ALJ properly explained the supportability and 
consistency of Dr. Veits’ opinion, did not disregard or reject the opinion, and considered it 
in determining plaintiff’s RFC. The ALJ was not required to defer or give specific weight 

to Dr. Veits’ opinion. 
Further, even if the ALJ had been obliged to give controlling weight to Dr. Veits’ 
opinion concerning plaintiff’s ability to interact with the general public, the error would be 
harmless because the jobs identified by the VE and ALJ do not require interaction with the 
public. The Dictionary of Occupational Titles (“DOT”) describes the job of a garment 
folder as follows: 
Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and 
jackets: Shakes out, smooths, folds, sorts, and stacks wash according to 
identification tags. Inspects pressed laundry for holes or tears, and separates 
defective articles for transfer to repair department. Folds laundry, preparatory 
to wrapping, for delivery to customer. Folds pressed shirts around cardboard 
forms and inserts assembly in plastic bags. May attach missing buttons to 
articles, using button-sewing-machine or button-attaching machine. May 
unload tumbler. May turn socks, match pairs, and tie socks into bundles. 

U.S. Dep’t of Labor, Dictionary of Occupational Titles (4th ed. 1991) § 369.687-018. The 
work of a garment folder involves light physical demands, common sense understanding 
to carry out one or two-step instructions, the ability to perform basic math functions, and 
the ability to read, write, and speak at specified levels, and does not require significant 
functions related to interacting with people. Id. The DOT describes the job of a wearing 
apparel shaker as follows: 
Shakes out semidry wearing apparel to prepare it for ironing, sorting, or 
folding. Inspects articles for tears or missing buttons, and routes damaged 
articles to repair department. Sorts, folds, and stacks articles on handtrucks 
or hangs them on moving conveyor. May starch shirt collars and cuffs. 

 13 
Id. § 361.687-026. The DOT describes the job of a wearing apparel shaker as having the 
same requirements as that of a garment folder. Id. The DOT describes the job of a linen 
grader as follows: 

Grades laundered towels and similar linens according to quality, condition, 
and kind of item. Ties them into bundles of specified size or number of 
articles and records contents of each bundle. Stores bundles in bins for 
delivery to customers of linen-rental service. 

Id. § 361.687-022. The job of a linen grader entails light physical demands, common sense 
understanding to carry out detailed but uninvolved written or oral instructions and deal 
with problems involving few concrete variables in or from standard situations, the ability 
to perform basic math functions, and to read, write, and speak at specified levels. Id. None 
of the jobs identified by the VE or ALJ involves more than casual contact with the general 
public and, therefore, the error, if any, was harmless. See, e.g. Jones v. Comm’r of Soc. 
Sec., 492 F. App’x 70, 73 (11th Cir. 2012) (not including driving impairment was harmless 
because the identified jobs did not involve driving); Battle v. Astrue, 243 F. App’x 514 
(11th Cir. 2007) (incorrectly posing a claimant’s educational level was harmless because 
it did not affect the VE’s conclusion); see also Sanchez v. Comm’r of Soc. Sec., 507 F. 
App’x 855, 856 (11th Cir. 2013) (finding harmless error when no further findings could be 
made that would alter the ALJ’s decision). 
VI. Conclusion and Order 
Upon consideration of the parties’ briefs and the record, the court concludes that the 
Commissioner’s decision is based on substantial evidence and is in accordance with 
controlling law. The Commissioner’s decision will be affirmed by separate judgment. 
In addition, it is 
 14 
ORDERED that the plaintiff’s motion for an award of EAJA fees is DENIED. See 
Doc. 12. 
Done, on this the 9th day of September, 2020. 

 /s/ Susan Russ Walker 
 Susan Russ Walker 
 United States Magistrate Judge 

 15